UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 18-0105 (PLF) |
| SAMIRA JABR, | ) ) ) | |
| Defendant. | ) ) | |

MEMORANDUM OPINION AND ORDER

This is a White House fence-jumper case. But the defendant, Samira Jabr, never gained entry to the White House or its surrounding grounds on April 20, 2018. Instead, she was arrested on the steps of the U.S. Treasury Building. Within days of Ms. Jabr's arrest on the Treasury grounds, the United States filed a one-count information charging her with the misdemeanor of "knowingly enter[ing] and remain[ing] in a restricted building and grounds, that is, the White House Complex and United States Department of Treasury Building and Grounds, without lawful authority to do so," in violation of 18 U.S.C. § 1752(a)(1). See Information [Dkt. No. 4]. Ms. Jabr subsequently waived her right to a jury trial and requested a non-jury trial. See Waiver of Trial by Jury and Request for Nonjury Trial [Dkt. No. 17].

Trial before the Court began on August 14, 2018. The government put on its case, calling four witnesses and submitting thirteen exhibits, including seven different segments of security camera footage [Gov. Ex. 1] and two excerpts from Ms. Jabr's post-arrest interview with two United States Secret Service agents [Gov. Ex. 2]. At the close of the government's case, the defendant moved for judgment of acquittal. See Mot. for Judgment of Acquittal [Dkt.

No. 23]. The Court heard argument on August 15, 2018, accepted supplemental briefs from the parties, and then heard further argument on September 13, 2018.

By Opinion and Order of May 16, 2019, the Court granted Ms. Jabr's motion for judgment of acquittal as to the substantive charge of entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1), but denied her motion with respect to the offense of attempting to enter or remain in a restricted building or grounds. See United States v. Jabr, Criminal No. 18-0105, Opinion (May 16, 2019) [Dkt. No. 31] at 23, 35; May 16, 2019 Order [Dkt. No. 32]. It then found her guilty of the misdemeanor of attempting to violate 18 U.S.C. § 1752(a)(1). United States v. Jabr, Criminal No. 18-0105, Opinion (May 16, 2019) at 35-36. Sentencing was scheduled for July 24, 2019. Ms. Jabr, who lives in California, formally waived her right to be present in person for the sentencing, see Notice of Consent [Dkt. No. 33], and the Court granted her request – over the objection of the government – to dispense with a presentence investigation report. See June 19, 2019 Order [Dkt. No. 39]. Subsequent events have demonstrated that not requiring a formal presentence investigation report was a mistake.

At the sentencing hearing on July 24, 2019 – with the defendant appearing by telephone – the Court indicated that it had carefully reviewed the sentencing memoranda filed by the government and by the defendant. The Court heard from counsel for the parties and from the Probation Officer, as well as from Ms. Jabr and her mother, and it reviewed the exhibits submitted by the government. The Court concluded that Sentencing Guideline 2B2.3, the guideline for trespassing, governs a violation of 18 U.S.C. § 1752(a)(1). It found the base offense level to be four and added four offense levels under Sections 2B2.3(b)(1)(B) and 2X1.1 for attempting to trespass on the White House grounds, for a total offense level of 8. See

Transcript of Sentencing Hearing on July 24, 2019 ("Tr.") at 81:17-22.[1]  It rejected defense counsel's arguments for downward departures under Sections 5H1.3 and 5K2.13 of the Sentencing Guidelines.  See Tr. at 81:23-82:5.  On the basis of Ms. Jabr's three prior misdemeanor convictions, it found that Ms. Jabr had three criminal history points and therefore was in Criminal History Category II.  With an Offense Level of 8 and a Criminal History Category of II, the Court found that Ms. Jabr's Guidelines sentencing range was four to ten months.  See Tr. at 79:16-22; 81:17-22.  The Court concluded, however, that it was appropriate to vary downward from the Guidelines sentencing range given the nature of the offense, Ms. Jabr's background, and her mental health issues.  See Tr. at 73:1-75:4; 79:4-81:16; 82:2-5.  It sentenced her to time served, which was approximately seven days.  See Tr. at 82:9-19.

The matters now at issue before the Court arise with respect to three aspects of the sentence the Court imposed:  restitution, and two of the conditions of supervised release.  In its sentencing memorandum, the government had requested that the Court order Ms. Jabr to pay $480 in restitution to a person whose purse Ms. Jabr had stolen in Nevada at the beginning of her journey to Washington, D.C. to commit the offense of which she was convicted here.  See Gov't Sentencing Mem. [Dkt. No. 40] and Reply [Dkt. No. 42].  The government argued at length at the sentencing hearing about the purse snatching and presented a great deal of evidence, including a video of Ms. Jabr snatching a woman's purse at a casino in Nevada as she began her journey to Washington, D.C.  See Tr. at 5:5-10:11.  The government argued that restitution was appropriate because the purse snatching was relevant conduct under Section 1B1.3 of the Sentencing Guidelines.  See Tr. 52:22-53:20.  The Probation Office concurred with the

---

[1] As the Court found in its opinion of May 16, 2019, Ms. Jabr clearly had the intent to enter the White House grounds.  See United States v. Jabr, Criminal No. 18-0105, Opinion (May 16, 2019) at 27-34.

3

government's reading of the Guidelines and thought restitution could be ordered based on the facts as it understood them. See Tr. at 62:25-64:4. While the Court expressed some skepticism about the restitution argument, see Tr. at 39:21-40:19; 55:20-56:9, it ultimately agreed with the government and the Probation Office and imposed restitution in the amount of $480 at the conclusion of the sentencing hearing. See Tr. at 82:6-8; 83:13; 85:2-19.

In addition, the Court imposed two conditions of supervised release at the request of the government and at the suggestion of the Probation Office in the Northern District of California, the office charged with supervising Ms. Jabr during her period of supervised release. See Tr. at 91:9-96:6. See also Gov't Sentencing Mem. [Dkt. No. 40] at 8; Tr. at 65:1-66:3 (Probation Officer explaining the California Probation Office's supervision request). First, the Court required as a condition of supervised release that the defendant submit her "person, residence, office, vehicle or any other property under [her] control to a search . . . by the United States Probation Office . . . with or without suspicion." Tr. at 84:12-17. The Court also ordered as a condition of supervised release that the defendant "submit to a protective intelligence interview with the United States Secret Service regarding the degree of risk [she] may pose to persons or facilities under Secret Service protection, and cooperate fully with any inquires by the United States Secret Service pursuant to its responsibilities under 18 U.S.C. § 3056." Tr. at 84:21-85:1. The defendant, through counsel, objected strenuously to both of these conditions during the sentencing hearing on July 24, 2019. See Tr. at 90:24-91:8.

On July 29, 2019, the defendant moved to stay the payment of restitution. See Def.'s Mot. to Stay Payment of Restitution [Dkt. No. 47]. On August 13, 2019, the government filed a response to the motion, in which it stated that it had no objection to the motion to stay payment of restitution. Gov't Resp. to Mot. to Stay Payment of Restitution [Dkt. No. 53].

Despite its vigorous argument in support of restitution at the sentencing hearing and in its sentencing memorandum, in its response the government now said it "does not object to removing the restitution requirement from the judgment" because "[c]ounsel for the United States has consulted with the Appellate Division of [its] office, which determined that it would not be able to defend the restitution order on appeal." See id. By contrast, the government vigorously continued to support both the search condition and the protective intelligence interview condition in a supplemental sentencing memorandum filed on the same day. See Gov't Resp. to Def.'s Suppl. Sentencing Mem. [Dkt. No. 52]. While the supplemental briefing requested by the Court was ongoing, the Court refrained from entering a final judgment in this case.

In a Memorandum Opinion and Order dated September 9, 2019, the Court raised sua sponte the question whether, after the passage of time between the sentencing hearing on July 24, 2019 and the completion of supplemental briefing on August 26, 2019, it still had the authority to vacate the restitution order and/or to amend the conditions of supervised release, should it agree that it was appropriate to do so. See United States v. Jabr, Criminal No. 18-0105, 2019 U.S. Dist. LEXIS 152742 at *2 (D.D.C. Sept. 9, 2019). In its response to the Court's order, the government argued that the Court currently does not have the authority to modify the oral sentence pronounced on July 24, 2019. See Gov't Resp. to the Mem. Op. and Order [Dkt. No. 56]. It cited Rule 35(a) of the Federal Rules of Criminal Procedure, which permits a court to correct a sentence resulting from "arithmetical, technical, or other clear error" only "[w]ithin 14 days after sentencing." See id. (citing FED. R. CRIM. P. 35(a)). The government also pointed out that this fourteen-day time limitation served as a jurisdictional bar to the Court's ability to change a sentence. See id. (citing United States v. Griffin, 524 F.3d 71, 83 n.14 (1st Cir. 2008)

5

and United States v. Pletnyov, 47 F. Supp. 3d 76, 79 (D.D.C. 2014)).  The defendant, through counsel, disagreed.  While the defendant argued that the oral pronouncement of the sentence should not be considered final, it did not cite to any law that recognizes the Court's authority at this late date to vacate or amend the sentence the Court had orally imposed on July 24, 2019.  See Def.'s Resp. to the Mem. Op. and Order [Dkt. No. 57].

Regrettably, the Court must agree with the government that the Court now has no jurisdiction to modify the conditions it imposed at the sentencing hearing on July 24, 2019.  It is established that the oral pronouncement of a sentence constitutes the official sentence of the Court.  The written judgment merely memorializes the sentence previously announced.  See United States v. Knight, 824 F.3d 1105, 1112 (D.C. Cir. 2016) (noting that "oral 'pronouncement of the sentence constitutes the judgment of the court'") (citing United States v. Love, 593 F.3d. 1, 9 (D.C. Cir. 2010)); United States v. Bikundi, Criminal No. 14-0030, 2017 WL 10439558, at *1 n.1 (D.D.C. June 28, 2017) (stating that oral pronouncement of sentence controls over the written judgment form).  See also United States v. Booker, 436 F.3d 238, 245 (D.C. Cir. 2006) (holding that "no second or different judgment may be rendered . . . until the first shall have been vacated and set aside or reversed on appeal or error").  The court "has no lawful authority to supplement [the oral pronouncement of a] sentence with a second one."  See United States v. Booker, 436 F.3d at 245.  If the written judgment form were to conflict with the Court's orally pronounced sentence, the written judgment form would be a "nullity" because "the oral pronouncement constitutes the judgment," and there can only be "one judgment."  Id.  And that judgment may only be corrected within fourteen days after it is announced.  See FED. R. CRIM. P. 35(a).  See also FED. R. CRIM. P. 35(c) ("'sentencing' means the oral announcement of the sentence"); United States v. Pletnyov, 47 F. Supp. 3d at 79.

6

If the Court had jurisdiction, it would vacate the restitution condition, as both parties now request. As for the conflicting positions of the parties with respect to the search condition and the interview condition, the Court will not address those issues because it is without jurisdiction to decide them. Unfortunately, those issues will have to be resolved in the first instance by the court of appeals. This Court has no choice but to enter a judgment consistent with its oral ruling and let the remaining issues proceed to argument before the court of appeals. Accordingly, it is hereby

ORDERED that the defendant's motion to stay payment of restitution [Dkt. No. 47] is GRANTED; and it is

FURTHER ORDERED that the sentence announced orally at the July 24, 2019 sentencing hearing will be embodied in a formal judgment entered this same day.

SO ORDERED.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE: November 19, 2019